UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

RICHARD F. THOMAS,

        Petitioner,                              Case No. 2:14-cv-170

v.                                                      Honorable R. ALLAN EDGAR

JEFFREY WOODS,

        Respondent.

_____/

**MEMORANDUM AND ORDER**

        Petitioner Richard F. Thomas, filed this petition for writ of habeas corpus challenging his January 2012, open murder jury conviction in violation of Mich. Comp. Laws. § 750.316C. Petitioner was convicted of the October 24, 1971, murder of Elijah Todd Butler. Petitioner was sentenced to life imprisonment without parole. At the time of his trial and conviction, Petitioner was serving a mandatory term of life imprisonment for first degree murder. Petitioner is not challenging his first degree murder conviction. The Michigan Court of Appeals explained the facts of this case:

> Defendant's conviction arises out of the October 24, 1971, murder of Elijah Todd Butler. Defendant previously dated the victim's wife, Geraldine Butler. When defendant learned that Geraldine and the victim planned to marry, he repeatedly threatened to rape and kill Geraldine unless she broke off the wedding. Geraldine refused and she and the victim were married on October 20, four days before the homicide. On the day of the homicide, Geraldine saw defendant drive past her house in a Ford Fairlane that belonged to defendant's cousin. Later that afternoon, Geraldine and the victim drove from her house to the home of the victim's mother, which was located in the same neighborhood. On the way, they passed defendant, who was standing on the side of the road in front of his cousin's car with the hood open. Geraldine observed that defendant could see both her and the victim

as they drove by defendant. As Geraldine had done previously, based on defendant's controlling and threatening behavior, she warned the victim that defendant was a dangerous individual. Later, while removing luggage from their vehicle at the victim's mother's house, Geraldine and the victim saw defendant drive past the end of the block in the Ford Fairlane. That night, while at her mother-in-law's house, Geraldine, along with the victim, heard noises coming from outside. Geraldine was concerned that it might be defendant trying to harm them. When the victim went to investigate the noises for a second time, he was shot repeatedly through a window in the back door with a .22 caliber firearm. Before he died, the victim told Geraldine, "Geri, he did it." Defendant was not arrested and tried for this homicide until 2011, 40 years after the offense was committed.

PageID.428.

Petitioner argues that:

I. The forty year delay (allowed valuable key witnesses to die as well as start to develop dementia. Also, it gives rise to the question, since there was not any new information, what triggered the prosecution at this point?) This violated Petitioner's constitutional rights to due process, to a fair trial, to present a defense and to confront witnesses and evidence against him causing substantial prejudice at trial. In addition, counsel was ineffective for failing to move to dismiss the charges against him based on this delay.

II. The trial court abused its discretion in admitting evidence of similar bad acts, specifically the evidence related to the 1970 and 1974 shooting to prove identity.

Respondent argues that the court should exercise its discretion and dismiss this case under the concurrent sentence doctrine. Under the "concurrent sentencing doctrine," a "court may decline to hear a substantive challenge to a conviction when the sentence on the challenged conviction is being served concurrently with an equal or longer sentence on a valid conviction." *Dale v. Haeberlin,* 878 F.2d 930, 935 n. 3 (6th Cir.1989); *see also, United States v. Hughes,* 964 F.2d 536, 541 (6th Cir.1992). The doctrine is a discretionary one, *see Hughes,* 964 F.2d at 541, and courts "are admittedly hesitant to apply this doctrine." *Dale,* 878 F.2d at 935 n. 3; *see also, Winn v. Renico,* 175

Fed. Appx. 728, 732 (6th Cir.2006). The doctrine is applicable only "when there is *no possibility* of adverse 'collateral consequences' if the convictions stand." *Winn,* 175 Fed. Appx. at 732 (emphasis added); *see also, Dale,* 878 F.2d at 935 n. 3; *Wilson v. Straub,* 185 F. Supp.2d 766, 769 (E.D. Mich.2002) (Hood, J.).

Petitioner is challenging his 2012 conviction for first degree murder which resulted in imprisonment of life without parole. Petitioner is also serving a mandatory life sentence as a result of a 1976 first degree murder conviction. Therefore, even if the Court granted Petitioner relief on his 2012 conviction, he would still remain in custody for life. There are no collateral consequences which could justify the Court to not implicate the concurrent sentence doctrine in this case. Accordingly, the Petition shall be dismissed under the concurrent sentence doctrine.

Alternatively, the Petition lacks merit. In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective. Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute. Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is

contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court.

*See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Petitioner argues that the forty-year delay in bringing charges against him violated his Constitutional rights, and his trial counsel erred in failing to move to dismiss the chages. The Michigan Court of Appeals rejected that claim under a plain error analysis explaining:

> On appeal, defendant argues that his constitutional right to due process was violated by the 40-year delay between commission of the offense and his arrest. We disagree. Because defendant did not raise this issue at trial, it is unpreserved. *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). We review unpreserved appellate arguments for plain error affecting a defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).
>
> "'Mere delay between the time of the commission of an offense and arrest is not a denial of due process. There is no constitutional right to be arrested.'" *People v Patton*, 285 Mich App 229, 236; 775 NW2d 610 (2009), quoting *People v Anderson*, 88 Mich App 513, 515; 276 NW2d 924 (1979). However, charges should be dismissed when a prearrest delay results in actual and substantial prejudice to a defendant's right to a fair trial and the prosecution intended to gain a tactical advantage by way of the delay. *Patton*, 285 Mich App at 237. If a defendant demonstrates the requisite prejudice, "the prosecution must then persuade the court that the reason for the delay sufficiently justified whatever prejudice resulted." *Id.* "[A]n investigative, as opposed to tactical, delay does not violate the Due Process Clause of the Fifth Amendment[.]" *People v Adams*, 232 Mich App 128, 140; 591 NW2d 44 (1998).
>
> With respect to the necessary prejudice, "[s]ubstantial prejudice is that which meaningfully impairs the defendant's ability to defend against the charge in such a manner that the outcome of the proceedings was likely affected." *Patton*, 285 Mich App at 237. "This Court has reiterated that proof of 'actual and substantial' prejudice requires more

5

than generalized allegations." *Adams*, 232 Mich App at 135. In *Adams*, this Court, quoting *People v Loyer*, 169 Mich App 105, 120; 425 NW2d 714 (1988), observed:

"A defendant shoulders the burden of coming forward with evidence of prejudice. Until he does so, the prosecution's burden – to persuade the court that the delay was justified in the face of any resulting prejudice – is not triggered. The imperfection of a witness' memory may be exposed to the trier of fact during direct or cross-examination and may be emphasized to buttress or undermine credibility. If such absence of memory by a defendant's material witness due to a lengthy prearrest delay seriously impedes or significantly hinders a defendant in presenting his case, prejudice, of course, would be shown, and the prosecution would be required to demonstrate how that prejudice was justified by the prearrest delay. In this case, however, no such impediment or hindrance was manifest. Moreover, we decline to accept defendant's assertion on appeal that 'the exceptionally long delay in the present case should itself raise a strong inference of prejudice.' Without specific references to instances of prejudice-generating occurrences, and without specific allegations of actual prejudice resulting therefrom, the prosecution would be at an insuperable disadvantage indeed in attempting to show how such unspecified prejudice was in fact justified." [*Adams*, 232 Mich App at 135.]

Here, defendant asserts that the delay was not the result of an ongoing investigation, that there had been no investigation between the mid-1970s, when defendant was sentenced to mandatory life in a different murder case, and 2010, that the police had believed all along that defendant had committed the murder, and that the prosecutor indicated below that the case was not pursued further in 1971 because defendant had been sent back to prison on a parole violation shortly after the murder. Defendant additionally contends that all of the witnesses related to the murder case were available in 1971, but the police nonetheless failed to speak to many of the witnesses in 1971 and instead waited to talk to them for the first time nearly 40 years later, and that the same investigative and evidentiary avenues eventually pursued by the police had also been available from the beginning.

With respect to prejudice, defendant contends that Linda Thomas, who was the wife of defendant's cousin alluded to above, had confirmed his alibi back in 1971; however, the prosecution was able to exploit her memory loss on the matter at the time of trial. According to a 1971 police report, Thomas informed police that she, defendant, Lacy

6

Harris, and three small children were at her home at the time of the shooting. At trial, Thomas testified that she had no memory of the evening and did not even recall talking to the police. And in connection with Thomas, defendant maintains that Thomas's memory loss compromised his ability to effectively cross-examine Lacy Harris. Harris, who was another one of defendant's cousins, testified that she was at Thomas's home on the night of the murder, that, at some point during the evening, defendant arrived at the house appearing nervous, and that defendant told her and the others present that should any one ask where he had been, they were to say that he had been with them all evening. Harris also testified that Thomas was present at the time. Defendant further argues that another alibi witness, Raymond Tardy, died 20 years after the murder and that Tardy's wife, who died before trial but after the preliminary examination, could not recall the events from 40 years earlier. There is no indication in the record that Mr. or Mrs. Tardy would have been able to provide defendant with an alibi at or around the time of the shooting, other than a purported statement made by defendant to police in 1971 that he had been at the Tardy home watching football at or around the time of the homicide.

We first examine defendant's prejudice argument in the context of any detrimental impact of the 40-year delay on Thomas's memory. We conclude that it is insufficient to establish substantial prejudice that meaningfully impaired defendant's ability to defend against the murder charge in such a manner that the outcome of the proceedings was likely affected. *Patton*, 285 Mich App at 237. The police report from 1971, wherein Thomas provided information that would support an alibi defense, was admitted into evidence by stipulation of the prosecution. Accordingly, defendant was not left with a complete absence of evidence to attack Harris's credibility and to establish his claimed alibi. The alibi defense, despite the 40-year delay, remained available by way of the police report. Thomas testified that she would not have lied to protect defendant, which gives support for her comments to police in 1971. Furthermore, Thomas did not recant or otherwise disavow the 1971 statement to police.

With respect to defendant's prejudice argument in the context of any detrimental impact of the 40-year delay on Mrs. Tardy's memory, along with the fact that the late Mr. Tardy was no longer available to testify, there is no indication in the record that the Tardys themselves ever even hinted at being able to provide defendant with an alibi defense. Assuming defendant made the statement to police that, as described by the prosecutor, he was with the Tardys at or around the time of the crime, and assuming that the Tardys would have actually

7

> so testified had this case proceeded to trial in the 1970s, there seemingly would have been a direct conflict in defendant's alibi defense – was he with Thomas and Harris or the Tardys at or around the time of the homicide. This would cause a reasonable juror to suspect fabrication relative to any alibi defense. The prejudice claim associated with the Tardys is too speculative and tenuous to merit further consideration of defendant's due process argument. Further, there is nothing in the record to suggest that the prosecution intended to gain a tactical advantage by way of the delay.
>
> Defendant bootstraps an ineffective assistance of counsel argument in relationship to the prearrest delay argument, but this fails because trial counsel is not ineffective for failing to make a futile motion. *People v Fike*, 228 Mich App 178, 182-183; 577 NW2d 903 (1998).

PageID.429-431.

In *United States v. Lovasco*, 431 U.S. 783 (1977), the Supreme Court reversed a lower court's dismissal of an indictment based upon pre-indictment delay. The defendant argued that due process required dismissal of the indictment due to an 18-month delay between the government's knowledge of the crime and defendant's indictment. The defendant attempted to establish prejudice by showing that two witnesses for his defense had died during the delay to bring the charges. The defendant did not state how the witnesses would have aided the defense. The only reason cited by the government for the delay was that it hoped to discover other individuals involved in the crime prior to indictment. The court noted that "actual prejudice makes a due process claim concrete and ripe for adjudication, not that it makes the claim automatically valid." *Id.* at 789. Further, the court stated "that the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." *Id.* at 790. The court found the delay was a good faith delay to undertake further investigation. The court stated "[i]n our view, investigative delay is fundamentally unlike delay undertaken by the Government solely 'to gain tactical advantage over the accused. . . .' We therefore hold that to prosecute a defendant following investigative delay does not deprive him of due process,

8

even if his defense might have been somewhat prejudiced by the lapse of time." *Id.* at 795-96, citing *Marion*, 404 U.S. at 326.

Similarly, in this case Petitioner has failed to show the delay in prosecution was for the government to gain some tactical advantage. Moreover, Petitioner has failed to show that he suffered prejudice as a result of the delay. Further, Petitioner has failed to show that his counsel was ineffective for failing to bring a motion to dismiss the charges. In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691. Under the circumstance of this case, counsel's failure to bring a frivolous motion to dismiss this case for delay of prosecution was not unreasonable. The Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined

by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.[1]

Petitioner argues that the trial court erred by admitting evidence regarding the use of a .22 caliber rifle in shootings that occurred in 1970 and 1974. Petitioner argues that this evidence was improperly admitted to prove identity. However, "such an inquiry . . . is no part of a federal court's habeas review of a state conviction." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). In *Estelle v. McGuire*, the Supreme Court addressed the issue of whether the admission of evidence in violation of California state law entitled a petitioner to habeas corpus relief.

> We have stated many times that "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102, 111 L. Ed. 2d 606 (1990); see also *Pulley v. Harris*, 465 U.S. 37, 41, 104 S. Ct. 871, 874-75, 79 L. Ed. 2d 29 (1984). Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21, 96 S. Ct. 175, 177, 46 L. Ed. 2d 162 (1975) (per curiam).

*Estelle v. McGuire*, 502 U.S. at 67-8.

---

[1]In addition, Petitioner procedurally defaulted this claim in the state courts. The Michigan Court of Appeals reviewed Petitioner's claims for plain error. In this circuit, "plain error review does not constitute a waiver of state procedural default rules." *Seymour v. Walker*, 224 F.3d 542 (6th Cir. 2000) (citations omitted); *Scott v. Mitchell*, 209 F.3d 854, 866-68 (6th Cir. 2000); see also *Coe v. Bell*, 161 F.3d 320, 330 (6th Cir. 1998) (state court's alternative holding on the merits does not require federal court to disregard the procedural bar); *McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991) (same); *Paprocki v. Foltz*, 869 F.2d 281, 284-85 (6th Cir. 1989) (claim is defaulted even where the state court may excuse the default for "manifest injustice"); *Federico v. Yukins*, No. 93-2424, 1994 WL 601408, at *3-*4 (6th Cir. Nov. 2, 1994) (same, for "miscarriage of justice").

The appropriate inquiry is whether the allegedly improper admission of evidence violated the petitioner's constitutional rights. *Estelle v. McGuire*, 502 U.S. at 68. A federal court will grant habeas corpus relief only where a violation of the state's evidentiary rule results in the denial of fundamental fairness, and therefore, a violation of due process. *Brown, III v. O'Dea*, 187 F.3d 572, 578 (6th Cir. 1999) (citing *Cooper v. Sowders*, 837 F.2d 284, 287 (6th Cir. 1988)).

> "The standard in determining whether the admission of prejudicial evidence constitutes a denial of fundamental fairness is whether the evidence is 'material in the sense of a crucial, critical highly significant factor.'" *Leverett v. Spears*, 877 F.2d 921, 925 (11th Cir. 1989) (quoting *Redman v. Dugger*, 866 F.2d 387, 390 (11th Cir. 1989)).

*Brown, III v. O'Dea*, 187 F.3d at 578. Petitioner has failed to show that his due process rights were violated by the admission of this evidence at trial. Further, the Michigan Court of Appeals rejected this claim explaining:

> Finally, defendant argues that the trial court erred by admitting evidence of two prior bad acts under MRE 404(b) to prove defendant's identity. The first act was a 1970 breaking and entering in which defendant used a .22 caliber rifle to shoot through the window of a Sunoco gas station. The second act was a 1974 incident in which defendant shot the owner of that same Sunoco station with a .22 caliber firearm. MRE 404(b)(1) provides:
>
> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.
>
> When the trial court addressed the 1970 breaking and entering crime, it stated, "I think that comes in under plan, scheme, system, knowledge." When the trial court addressed the 1974 shooting, it found that the evidence was admissible to show "common scheme, plan, system." As to both prior bad acts, the trial court ruled that they

> were not being offered to show propensity. The trial court instructed the jury that it could consider evidence of the two prior bad acts only for purposes of "motive, opportunity, intent, preparation, scheme, plan, system of doing an act, knowledge, identity, absence of mistake or accident," and no other purpose.
>
> Defendant's entire appellate argument is based solely on "identity" analysis, absent any analysis whatsoever on the other purposes set forth in the jury instruction and in the court's rulings on the 1970 and 1974 acts. There is no argument that the evidence was inadmissible to show "scheme, plan, or system in doing an act," MRE 404(b)(1), even though this language formed the specific basis of the trial court's rulings. Accordingly, because of defendant's complete failure to argue inadmissibility for listed and acceptable purposes under MRE 404(b)(1) relied on by the court, other than identity, defendant has effectively waived any claim that the evidence should have been excluded. See *City of Riverview v Sibley Limestone*, 270 Mich App 627, 638; 716 NW2d 615 (2006) ("[A] party's failure to brief an issue that necessarily must be reached precludes appellate relief.") Assuming that the trial court erred in allowing the jury to consider the evidence for the particular purpose of identity, defendant has failed to prove any prejudice, given that the evidence was otherwise admissible and subject to consideration by the jurors, except for propensity purposes, in light of defendant's lack of argument regarding the other purposes.

PageID.431-432. The Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.[2]

Accordingly, the Petition is Dismissed.

---

[2] In addition Petitioner procedurally defaulted this claim in the state courts on grounds other than proof of identity. The Michigan Court of Appeals determined that Petitioner waived all other claims regarding admissibility of this evidence by only arguing that the evidence was prejudicial to prove identity.

In addition, if Petitioner should choose to appeal this action, a certificate of appealability is denied as to each issue raised by the Petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong. Therefore, the court will deny Petitioner a certificate of appealability.

A Judgment consistent with this Memorandum and Order will be entered.

SO ORDERED.

Dated:   6/8/2016                             /s/ R. Allan Edgar
                                              R. ALLAN EDGAR
                                              UNITED STATES DISTRICT JUDGE